Alma Rosales
2712 N Goldeneye Way
Meridian, Idaho 83646
Telephone: (208) 871-7237
mayesme24@gmail.com
Pro Se

U.S. COURTS

NOV 04 2019

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

ALMA ROSALES,

    Plaintiff,

Vs.

IDAHO DEPARTMENT OF HEALTH AND
WELFARE; RUSSELL BARRON, Director
of the Idaho Department of Health and
Welfare; MATT WIMMER, Medicaid
Administrator; and any other agents working
in both the Medicaid and Food Stamp Benefit
divisions. MOLINA HEALTHCARE.

    Defendants.

Case No.

**COMPLAINT/ DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF**

COMES NOW ALMA ROSALES, plaintiff pro se and for cause of action against the above-named defendants does complain and alleges as follows:

### NATURE OF THE CASE

1) Plaintiff seeks damages for the violation of her fifth and fourteenth amendments under the constitution. 42 U.S.C. 1983.

2) Plaintiff seeks prospective and injunctive relief under the eleventh amendment.

3) Plaintiff seeks damages for defendant's Intentional Infliction of Emotional Distress.

4) Plaintiff seeks relief for defendant's violation of the Food Stamp Act 1964. 7 U.S.C. 2011.

5) Plaintiff seeks damages for defendant's violation of Title XIX of the Social Security Act. 42 U.S.C. 1396.

6) Plaintiff seeks damages for defendant's unlawful discrimination in violation of Title II of the ADA, 42 U.S.C 12132.

7) Plaintiff seeks damages for defendant's breach of contract and the implied covenant of good faith and fair dealing.

8) Plaintiff seeks damages for defendant's insurance bad faith.

## PARTIES

9) At all times relevant herein, Ms. Rosales was, and is an adult individual and a citizen of the United States who has resided in Ada County. Ms. Rosales is disabled.

10) Defendant Russell Barron is the Director of the IDHW, which has legal authority and responsibility for operating Idaho's Medicaid programs, including the 'age and disabled' waiver program. The Director also has authority and responsibility for operating the food stamp program. Russell is sued in both personal and official capacity.

11) Defendant Matt Wimmer is the administrator of the Medicaid division of IDHW has day to day responsibility for overseeing and implementing Idaho's Medicaid program, including the Age and disabled waiver. Wimmer is sued in both personal and official capacity.

12) Molina Healthcare is private insurance company contracted with the IDHW to administer the participants with dual eligibility for both Medicare and Medicaid. Defendant is administering

the Medicaid Waiver programs including the Age and Disabled waiver.

## JURISDICTION AND AVENUE

13) The Court has jurisdiction of this matter pursuant to the Const. Amend. V. Amend. XIV., Food Stamp Act 1964. 7 U.S.C. 2011, Title XIX of the Social Security Act. 42 U.S.C. 1396., Title II of the ADA, 42 U.S.C 12132.

14) As the events giving rise to this action all occurred in the State of Idaho, venue is appropriate in the District of Idaho pursuant to 28 U.S.C. 1391 (a) (2).

## FACTS COMMON TO ALL CAUSES OF ACTION

15) On 9/6/2019, plaintiff received a "notice" under her food stamp benefit telling her benefits will be decreasing to $117 starting October 2019. The reason is vague stating that it is 'the result of a change in the expenses indicated for your family' citing an entire set of rules from 100-799 under the food stamp program IDAPA 16.03.04.

16) On 9/15/2019, plaintiff's son Mendez contacted the IDHW. He told the IDHW that his mom had not reported any changes and that nothing had changed since the last time. Furthermore, he asked for an answer without going thru an appeal and if not to consider the email a 'request for a hearing.' The IDHW 'notices' note under the rights for a hearing that in order to request a 'Fair Hearing' to call 1-877-456-1233 or email mybenefits@idhw.idaho.gov.

17) On 9/17/2019, IDHW replied and stated that "please be advised the Federal guidelines for the SNAP program are changing in October 2019." Furthermore, every year in October the guidelines change, income and expenses, this year the <u>amount of credit allowed for utilities has decreased causing the decrease in benefits.</u>

18) On 9/17/2019, Mendez replied to the IDHW and asked for further clarification. Specifically, he requested copies of the Federal guidelines from last year and this year along with clarification on how benefits changed due to the guidelines.

19) On 9/17/2019, IDHW responded to Mendez request for copies of the Federal guidelines by stating that 'we are unable to find your name in our system' and requested the name, DOB and address. Notably, the IDHW was not able to find Mendez mother's name on the same day he requested the guidelines.

20) On 9/17/2019, Plaintiff's son Mendez provided the requested personal identifiers to the IDHW.

21) On 9/19/2019, Mendez provided the requested information by the IDHW again along with the case number and he requested a copy of the guidelines showing decrease.

22) On 9/19/2019, Mendez contacted the FNS San Francisco Office and the Civil Rights Division with the USDA. He explained that the IDHW has taken away both plaintiff food stamps and Medicaid at the same time. Noting that initially the food stamps were decreased, and later the IDHW stated they could not find her in the system.

23) On 9/27/2019, Mendez contacted IDHW again because no response had been received either via email, phone or regular mail since 9/17/2019. Again, he requested a copy of the guidelines from last year and this year due to the fact the reason for decreasing the benefits was due to a decrease in the guidelines. He also requested a hearing yet again.

24) On 10/2/2019, Mendez contacted the FNS San Francisco office. They had advised him previously that the IDHW was the administrator of the program and all the Federal government

could do was to facilitate communication with the State. Mendez had not heard back from the IDHW with the status of the food stamps since 9/17/2019. No Notice of Hearing being set and it appears that in fact the Federal guidelines did not decrease and instead of providing the documentation the IDHW decided to take away the food stamps.

25) On 10/3/2019, Mendez contacted the IDHW again to request a 'Fair Hearing' noting that multiple requests for one has been made.

26) On 10/3/2019, IDHW finally responded to plaintiff (presumably after finding her in the system) by providing an 'explanation' for the decrease in benefits. The message is basically letting her know that her benefits have decreased from 121 to 117 due to the alleged changes in guidelines for utilities expense and their attached three notices explain that. Furthermore, a hearing could be requested. However, the IDHW did not provide the requested copies of the Federal guidelines from last year and this year used to decrease the benefits.

27) On 10/3/2019, Plaintiff son Mendez requested a hearing yet again and as of the writing of this complaint the IDHW has not set a 'fair hearing' or provided a copy of the guidelines. Furthermore, participants entitled to benefits administered by the IDHW are not getting an impartial 'fair hearing' due to the fact that the State of Idaho terminated the contract with the independent outside Law Firm and decided for 'convenient' reasons to have 'in-house' lawyers at the Attorney General's office become the new 'hearing officers' over benefits adjudications.

28) On/about 1/2017, a Registered Nurse with the IDHW 'Age and Disabled Waiver program' visited plaintiff to assess whether she needed nursing facility level of care since patient is disabled.

29) On 1/6/2017, the IDHW sent a Notice informing plaintiff that she was part of the waiver and

she did not have to pay anything out of her own pocket. Plaintiff did get her medical and dental card thru Medicaid and she did not had to pay anything; however there were other benefits under the waiver for which plaintiff was entitled to, but the IDHW did not inform/provided the benefits such as meals, transportation, home health, GYM membership, and personal care services,etc.

30) On/about 1/2019, the IDHW apparently made a determination to get rid of all Medicaid as secondary insurance and decided to pass those patients to two private insurance companies in Idaho: Blue Cross of Idaho and Molina Healthcare. Plaintiff started to receive letters encouraging to enroll with either insurance. The letters from the IDHW clearly implies that plaintiff is enrolled with Medicaid with this statement: "you won't lose any Medicaid benefits by trying the new plan."

31) On 8/1/2019, plaintiff received a letter from Molina Healthcare telling her that she has Medicaid coverage thru Molina Idaho Medicaid Plus which is a plan for people that are eligible for both Medicare and Medicaid. The letter explains the benefits some of them she has never received before as part of the Age and Disabled Waiver. Plaintiff was never told she would be 'assigned' to this private insurance.

32) On 8/2/2019, plaintiff received a letter from the IDHW telling her that she was enrolled in the Idaho Medicaid Plus and her Healthy Connections was cancelled. The change would not change her eligibility for Medicaid, which indeed the letter showed her current Medicaid ID number.

33) On 8/13/2019, plaintiff received a letter regarding the Health and Wellness prevention program benefit as part of the Medicaid coverage with Molina. Yet, another benefit she has not received for the past three years under the waiver.

34) On 8/28/2019, plaintiff decided to enroll on the combined Medicare/Medicaid plan under

Molina effective 9/1/2019.

35) On 8/28/2019, Mr. Brian Monsen the Molina Healthcare lead in Idaho explained to plaintiff son that 'if the person has both Medicare and Medicaid, then they are assigned to either Blue Cross or Molina so that person can have a case manager'..... Which is exactly what happened in plaintiff's case. Furthermore, Mr. Monsen states that once a person is made eligible for Medicaid services, Health and Welfare cannot deny Medicaid or waiver benefits.

36) On 9/6/2019, Katherine Baracchio a nurse with Molina came to plaintiff home for a nursing assessment. Plaintiff and her son told her that the IDHW had not sent a nurse after the initial 2017 visit. The nurse mentioned that it was "odd" that plaintiff showed up as being under the waiver on Molina side, but the IDHW had no record of her on their system. Presumably plaintiff name just popped on Molina's system like a rabbit being pulled out of a magic hat (never mind the previous letters sent by IDHW about the changes). Furthermore, the nurse asked if plaintiff had any documentation from the IDHW showing she was on the waiver.

37) On 9/6/2019, Molina Healthcare sent a letter stating that they are disenrolling her out of the combined Medicare/Medicaid plan because she does not have a qualifying level of Medicaid. It appears that the purpose of the nurse visit was not to make an assessment but rather to see if plaintiff had any evidence of enrollment with the IDHW Age and Disabled waiver.

38) On 9/16/2019, Plaintiff son filed a complaint with CMS and the USHHS Civil Rights Division.

39) On 10/16/2019, CMS responded to plaintiff stating that the IDHW has stated you have not used Medicaid services for 30 days and that 'you can appeal the decision to the IDHW.' However, CMS apparently does not realize that both Medicaid and the Age and Disabled waiver benefits were taken without any "notice" and prior to a fair hearing. In fact, CMS would know

that their approved January 2019 amendment to the age and disabled waiver states that appeals have to be exhausted thru the contractor prior to a 'fair hearing' with the 'in house' lawyers at the Attorney General's office.

## CAUSES OF ACTION

### A. VIOLATION OF CONSTITUTIONAL RIGHTS UNDER U.S. CONST. AMEND. V. AND U.S. CONST. AMEND. XIV. 42 U.SC. 1983.

40) Defendants reduced plaintiff food stamps to $117 on 9/6/2019 with an inadequate notice citing an entire set of rules from 100-799 under the food stamp program IDAPA 16.03.04. After questioning them, defendants stated that it was due to a decrease in the Federal guidelines for the amount allowed for utilities.

41) Defendants Notices do not comply with Due Process as it does not clearly explain the reasons for the reduction of benefits so that participants can adequately prepare an appeal to challenge the decision for food stamp reductions. Furthermore, plaintiff reviewed the previous notices for the past two years reducing her benefits from 193 to 117 and the notices are identical.

42) Defendants have refused to comply with plaintiff requests for a copy of the Federal guidelines from last year and this year showing the decrease in the amount allowed for utilities. The refusal to provide the information used to take the adverse action in her food stamps is a violation of Due Process.

43) Defendants have refused to set up a 'fair hearing' to contest her reduction of food stamps. Even if a hearing was provided, plaintiff would not be able to challenge the reduction without the information used by the defendants to decrease it. Furthermore, the 'fair hearings' are being presided by 'in-house' Attorneys at the Attorney General Office after for convenience reasons the

State of Idaho terminated the contract with the outside/independent Law Firm. The 'hearing officers' are not impartial adjudicators in violation of Due Process.

44) Plaintiff is disabled as defined under the Social Security Administration standards and a registered nurse with the IDHW determined she qualified for nursing facility level of care on 1/2017. She has dual eligibility to both Medicare and Medicaid. Defendants never provided an adequate notice under the Age and Disabled benefits explaining what benefits she qualified for, how many hours she was entitled to along with how the defendant computes how much money is allocated to the participant/what information is used. Plaintiff could not have appealed something that she didn't even know existed and that she was entitled to. The inadequate notices and the intentional omission of information are a violation of Due process.

45) Defendants at the IDHW never sent a nurse to plaintiff home after 1/2017. Finally, when defendant Molina Healthcare sent a nurse on 9/6/2019 it was only for the nurse to tell plaintiff that she was not on the IDHW age and disabled system and she asked if plaintiff had any information showing that she was on the waiver.

46) Later, defendant Molina Healthcare sent a letter dated 9/6/2019 to plaintiff stating that they will end the combined Medicare/Medicaid coverage thru Molina because she didn't have Medicaid. Defendants at the IDHW never sent a prior notice explaining the reason for taking her Medicaid in violation of Due Process. Medicaid and benefits under waiver administered by Molina were removed without prior notice and without a 'fair hearing' in violation of Due process.

47) Plaintiff cannot request a 'fair hearing' to contest the denial of Medicaid and waiver benefits when no 'notice' has been provided explaining the reasons for the denial and when the defendants

have omitted information regarding benefits she is entitled to. Furthermore, plaintiff cannot reasonably expect an impartial appeal with 'in-house' AG lawyers. All of these as a whole are a flagrant violation of Due process by defendants denying plaintiff benefits to which she is constitutionally entitled to.

48) Defendants reduction of food stamps and denial of Medicaid/waiver benefits are a violation of the Equal Protection Clause for a disabled person having legal rights to such benefits.

### B. VIOLATION OF THE FOOD STAMP ACT 1964. 7 U.S.C. 2011.

49) Congress enacted the food stamp program "to promote the general welfare, to safeguard the health and well-being of the nation's population by raising levels of nutrition among low-income households."

50) Federal law charges defendants with responsibility for proper administration of the food stamp program and require the defendants to have a system for monitoring and improving its administration of the program.

51) The food stamp act requires defendants to adopt a program for granting fair hearings and prompt determinations of claims by household aggrieved by the action of defendants.

52) Defendants are violating the food stamp act when they have reduced plaintiff benefits in the past two years from 193 to 117 with identical notices citing an entire set of rules from 100-799 under the food stamp program IDAPA 16.03.04 as authority for reducing benefits.

53) Defendants are violating the food stamp act when the notices are inadequate and do not provide detailed information that would apprise participants of the reasons for the adverse action so that they can prepare an appeal.

54) Defendants are violating the food stamp act when they withhold the information used by the IDHW to reduce the benefit. In plaintiff case, defendants have refused to provide the federal guidelines used to decrease the benefits even when this is a public record.

55) Defendants are violating the food stamp act when they refuse to set up a 'fair hearing' to contest the reduction of benefits. Even if one was set, it would be with a partial hearing officer employed as an 'in-house' lawyer at the Attorney General Office.

## C. VIOLATION OF TITLE XIX OF THE SOCIAL SECURITY ACT. 42 U.S.C. 1396.

56) Defendants are required to administer the Medicaid program "in the best interests of recipients."

57) Defendants are required by the Medicaid act to give plaintiff a meaningful choice between institutional or home and community based services. The Age and Disabled waiver allows participants to stay at home.

58) Defendant's never provided an adequate notice under the Age and Disabled waiver explaining what benefits she qualified for, how many hours she was entitled to along with how the defendant computes how much money is allocated to the participant/what information is used. Plaintiff could not have appealed something that she didn't even know existed and that she was entitled to. The inadequate notices and the intentional omission of information are a violation of the Medicaid Act.

59) Defendants at the IDHW never sent a nurse to plaintiff home after 1/2017. Therefore, plaintiff was not only denied benefits under the 'initial assessment' but there was no follow up from defendants to assess the medical condition, functional status or living situation of plaintiff.

Plaintiff benefits could not be modified without the required periodic assessment of her health and safety and as a result was denied any potential increase of benefits in violation of the Medicaid act.

60) Defendant Molina Healthcare sent a letter dated 1/6/2019 to plaintiff stating that they will end the combined Medicare/Medicaid coverage thru Molina because she didn't have Medicaid. Defendants at the IDHW never sent a prior notice explaining the reason for taking away her Medicaid in violation of the Medicaid act. Medicaid and benefits under waiver administered by Molina were removed without prior notice and without a 'fair hearing'

61) Plaintiff cannot request a 'fair hearing' to contest the denial of Medicaid and waiver benefits when no 'notice' has been provided explaining the reasons for the denial and when the defendants have omitted information regarding benefits she is entitled to. Furthermore, plaintiff cannot reasonably expect an impartial appeal with 'in-house' AG lawyers. Defendant's actions and omissions are a violation of the Medicaid Act.

## D. UNLAWFUL DISCRIMINATION IN VIOLATION OF TITLE II OF THE ADA, 42 U.S.C 12132.

62) Defendants intentionally omitted information of all the benefits plaintiff was entitled to after the 'initial assessment' by the IDHW nurse on 1/2017. Defendants never explained how the Age and Disabled waiver works.

63) Defendants never sent a nurse to plaintiff home after 1/2017. Therefore, plaintiff was not only denied benefits under the 'initial assessment' but there was no follow up from defendants to assess the medical condition, functional status or living situation of plaintiff. Plaintiff benefits could not be modified without the required periodic assessment of her health and safety and as a

result was intentionally denied any potential increase on them.

64) Defendant Molina Healthcare sent a nurse on 9/6/2019 to plaintiff home and it was only for the nurse to tell plaintiff that she was not on the IDHW age and disabled waiver system and she asked if plaintiff had any information showing that she was on the IDHW waiver.

65) Later, defendant Molina Healthcare sent a letter dated 9/6/2019 to plaintiff stating that they will end the combined Medicare/Medicaid coverage thru Molina because she didn't have Medicaid. Defendants at the IDHW never sent a prior notice explaining the reason for taking away her Medicaid. Medicaid and benefits under waiver administered by Molina were removed without prior notice and without a 'fair hearing.'

66) Defendants at the IDHW also decided to decrease plaintiff food stamps benefits on the same date defendant Molina Healthcare sent a letter informing her of the end of coverage due to not having Medicaid. On 9/6/2019, plaintiff received a "notice" under her food stamp benefit telling her benefits will be decreasing to $117 starting October 2019. The reason is vague stating that it is 'the result of a change in the expenses indicated for your family' citing an entire set of rules from 100-799 under the food stamp program IDAPA 16.03.04.

67) Defendants have refused to provide the public record of the federal guidelines used to decrease plaintiff food stamps and they have also refused to set up the so called 'fair hearing' with the 'in-house' lawyers at the Attorney General's Office who have an ethical duty to represent the interests of the State of Idaho.

68) Defendants reducing food stamps and taking away Medicaid/Waiver benefits on the same 9/6/2019 date is not coincidental and it is a calculated act of intentional discrimination of disabled plaintiff, while noting that the defendants have engaged in similar acts against disabled

people in case 1:12-cv-00022-BLW.

69) Defendants submitted a 1/2019 application for amendment to the age and disabled waiver in which they affirmatively state that Medicaid cannot be taken from participants that qualify for it. This is persuasive evidence that plaintiff has been subjected to intentional discrimination by defendants.

70) Plaintiff has submitted civil rights complaints with both the USDA and the USHHS. However, she has already been told by CMS that the solution is to file for a fair hearing of the denied Medicaid. It is a mutually beneficial relationship of cost sharing of benefits administered by the States, and some federal courts have actually held that the liability of cases like this one would fall on the federal government, therefore the filed complaints with the agencies are futile.

E. **PROSPECTIVE AND INJUNCTIVE RELIEF UNDER THE ELEVENTH AMENDMENT.**

71) Defendant made the decision to terminate contract with the outside independent Law firm Racine Olson who was previously conducting 'fair hearings' for reduction/denial of all federal benefits administered by the State of Idaho. The Fair hearings have been conducted by 'in-house' lawyers at the Administrative division of the Idaho Attorney General for "convenience" of defendant.

72) The Attorneys at the AG office have an ethical duty to represent the best interests of its client the State of Idaho and its agencies. The Attorneys have been doing just that prior to their 'appointment' as hearing officers. Our system of laws has always endeavored to prevent even the probability of unfairness. The Attorneys at the AG office have a conflict of interest in that they have a duty to its client, but are also expected to be an impartial adjudicator at the fair

hearings. This makes the current process of fair hearings objectionable.

73) Defendants implemented the policy of having AG Lawyers preside over fair hearings after terminating independent firm, which is a repudiation of the constitutional rights of participants Due Process.

74) Plaintiff cannot expect to get an impartial/unbiased hearing officer even if everything else was compliant with Due process and Federal requirements.

75) Nothing has changes since the recent decision from this Court on 1:12-CV-00022-BLW. Defendant have not changed the Notice requirement and still send automated 'notices' citing a whole set of rules as authority for vague reasons for reduction/denial of benefits. There are no clear non-arbitrary ascertainable standards regarding the waiver process and how it works. People are left wondering how they have qualified for the waiver, how much money they get, what benefits they qualify for, what methodology is used to calculate money/benefits for each participant, how to challenge the withheld evidence;etc. Furthermore, some people like plaintiff are baffled as to how there is such a thing as a 'health and safety' standard when defendants have not even sent a nurse to periodically check on her.

## F. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

76) Plaintiff is disabled. Some of her disabilities include mental health disorders that have been been and will be aggravated due to defendant's unlawful conduct.

77) Plaintiff has been deprived of benefits such as food, transportation, health and wellness prevention, home health, etc. after defendants omitted she was entitled to such benefits after the 1/2017 initial 'nursing assessment.' Thereafter, defendants never sent a nurse to periodically

assess the medical condition, functional status or living situation of plaintiff and when she has needed additional assistance.

78) Plaintiff has her food stamps reduced and defendants have denied her a fair hearing. Defendants refuse to provide the public record used to make the reduction. A Fair hearing would be with a partial 'in-house' lawyer at the AG office.

79) Defendants took away her Medicaid and 'removed' her from the waiver without prior notice and an opportunity for a fair hearing. A fair hearing would be with a partial 'in-house' lawyer at the AG office.

80) Plaintiff has a legal right and statutory entitlement to the food stamps, Medicaid, waiver benefits and without them she has and will continue suffer emotional distress from the ongoing discrimination by defendants.

81) Plaintiff notes that in Idaho in order to disqualify themselves from immunity, government employees must not only act wrongfully, they must also act with ill will.

## G. INSURANCE BAD FAITH.

82) Defendants at the IDHW applied for an amendment to the 'age and disabled' waiver with CMS on 1/2019. The purpose of the amendment was for dual eligible participants in Medicare and Medicaid to be transferred to either Blue Cross or Molina Healthcare for the administration of Medicaid and the waiver.

83) Defendants at the IDHW made the conscious decision to get rid of all secondary insured Medicaid participants and transferred them to the private insurances.

84) Defendant Molina and Blue Cross have a duty to the participants enrolled on their policies.

85) Defendants at the IDHW are ordering the private insurances to reduce/deny benefits to participants enrolled on their policies.

86) Defendant Molina Healthcare removed plaintiff from their combined Medicare/Medicaid plan after being told by defendants at the IDHW that she does not have Medicaid and needed to be removed from the plan.

87) Defendant Molina Healthcare has breached its duty to plaintiff as a member of their insurance policy by denying coverage. As a result, plaintiff has incurred and will continue to incur costs out of her own pocket due to defendant's unlawful conduct until benefits are reinstated.

## H. BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

88) Defendant Molina has a duty to the participants enrolled on their policies.

89) Defendants at the IDHW are ordering the private insurance to reduce/deny benefits to participants enrolled on its policies.

90) Defendant Molina Healthcare removed plaintiff from their combined Medicare/Medicaid plan after being told by defendants at the IDHW that she does not have Medicaid and needs to be removed from the plan.

91) Defendant Molina Healthcare has breached its duty to plaintiff as a member of their insurance policy by denying coverage. As a result, plaintiff has incurred and will continue to incur costs out of her own pocket due to defendant's unlawful conduct until benefits are reinstated.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues properly triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests judgment against the defendants as follows:

1. Award plaintiff compensatory and punitive damages for the violation of her constitutional rights under 42 U.S.C. 1983.

2. Grant plaintiff request for a temporary restraining order and preliminary injunction per FRCP 55.

3. Award plaintiff compensatory and punitive damages for Defendant's intentional infliction of emotional distress.

4. Award plaintiff compensatory and punitive damages for violation of the Food Stamp Act 1964. 7 U.S.C. 2011.

5. Award plaintiff compensatory and punitive damages for violation of Title XIX of the Social Security Act. 42 U.S.C. 1396.

6. Award plaintiff compensatory and punitive damages for defendant's unlawful discrimination in violation of Title II of the ADA, 42 U.S.C 12132.

7. Award plaintiff compensatory and punitive damages for defendant's breach of contract and the implied covenant of good faith and fair dealing.

8. Award plaintiff compensatory and punitive damages for defendant's insurance bad faith.

9. Award plaintiff the costs of this action, including reasonable attorney' fees should he retain one in the future.

10. Award plaintiff such other and further legal and equitable relief as the Court deems just and proper.

DATED: November 4, 2019

*Rosales*
Alma Rosales